UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | No. 2:18-cr-00089-JAW |
| | ) | |
| ARIEL MARTINEZ | ) | |

**ORDER ON MOTIONS FOR COMPASSIONATE RELEASE
AND APPOINTMENT OF COUNSEL**

An inmate serving a one-hundred-and-fifty-one-month sentence moves for reconsideration of his previously denied motion for compassionate release. The Court construes the inmate's motion as a new motion for compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A). The Court dismisses the motion without prejudice because it does not find extraordinary and compelling reasons for the inmate's compassionate release based on his medical condition and, moreover, concludes that the § 3553(a) factors counsel against release. The Court also dismisses without prejudice the inmate's request for appointment of counsel as unnecessary.

## I.    BACKGROUND

On June 21, 2018, a grand jury charged Ariel Martinez with one count of possession with intent to distribute fentanyl in violation of Title 21, U.S.C. § 841(a)(1). *Indictment* (ECF No. 31). On February 16, 2019, Mr. Martinez entered a plea agreement, in which he agreed to plead guilty to Count One of the Indictment, and the United States Attorney for the District of Maine agreed not to bring charges relating to distribution on or about November 21, 2017 to an individual who subsequently died of a fentanyl overdose. *Agreement to Plead Guilty (With*

*Stipulations and Appeal Waiver)* at 1 (ECF No. 55).  On July 25, 2019, Judge D. Brock Hornby sentenced Mr. Martinez to 151 months of incarceration.  *Min. Entry for Proceedings Held Before Judge D. Brock Hornby* at 2 (ECF No. 73).

On September 28, 2020, Mr. Martinez filed a motion for compassionate release and for appointment of counsel.  *Mot. to Reduce Sentence Pursuant to 18 U.S.C. § 3582(C)(1)(A) Compassionate Release* (ECF No. 77) (*First Mot. for Compassionate Release*).  On September 30, 2020, Judge Hornby denied Mr. Martinez's motion for compassionate release and for appointment of counsel.  *Decision and Order on Mot. for Compassionate Release* (ECF No. 78) (*First Order on Mot. for Compassionate Release*).

On January 31, 2023, Mr. Martinez filed a Motion for Reconsideration and Review of Denial of Previous Motion for Compassionate Release and Motion to Appoint Counsel.[1]  *Mot. for Recons. and Review of Denial of Previous Mot. for*

---

[1]      Mr. Martinez titles his motion as a motion for reconsideration.  *Def.'s Mot.* at 1.  The Federal Rules of Criminal Procedure do not explicitly provide for motions for reconsideration. *See United States v. Ortiz*, 741 F.3d 288, 292 n.2 (1st Cir. 2014) ("[M]otions for reconsideration in criminal cases are not specifically authorized either by statute or by rule") (citation omitted).  The Court of Appeals for the First Circuit, however, applies Federal Rule of Civil Procedure 59(e) to motions for reconsideration arising in the criminal context. *See, e.g.*, *United States v. Allen*, 573 F.3d 42, 53 (1st Cir. 2009); *see also In re Sun Pipe Line Co.*, 831 F.2d 22, 24 (1st Cir. 1987) (explaining that any "motion which ask[s] the court to modify its earlier disposition of a case because of an allegedly erroneous legal result" must be deemed to be brought under Rule 59(e)).  A motion for reconsideration under Rule 59(e) is timely if it is filed within ten days after entry of the judgment. *See* FED. R. CIV. PRO. 59(e); *Colon-Santiago v. Rosario*, 438 F.3d 101, 107 (1st Cir. 2006).  Here, Judge Hornby's Order denying Mr. Martinez's September 28, 2020 motion was issued on September 30, 2020, making Mr. Martinez's motion for reconsideration untimely.

Because Mr. Martinez has exhausted his administrative remedies by filing a recent request for a reduction in sentence to the warden of his institution on December 12, 2022, the Court instead construes his motion for reconsideration as a new motion for compassionate release.  *Def.'s Mot.* at 7, Ex. B, *RIS Request*.  "[A]s a general rule, [courts] are solicitous of the obstacles that pro se litigants face, and while such litigants are not exempt from procedural rules, we hold pro se pleadings to less demanding standards than those drafted by lawyers and endeavor, within reasonable limits, to guard against the loss of pro se claims due to technical defects." *Dutil v. Murphy*, 550 F.3d 154, 158 (1st Cir. 2008); *see Ayala Serrano v. Lebron Gonzalez*, 909 F.2d 8, 15 (1st Cir. 1990) (a court should liberally

*Compassionate Release, and Mot. to Appoint Counsel* (ECF No. 80) (*Def.'s Mot.*).[2]  On February 9, 2023, the Government responded.  *Gov't's Resp. to Def.'s Mot. for Recons. of Previous Mot. for Compassionate Release* (ECF No. 82) (*Gov't's Resp.*).  On March 13, 2023 the United States Probation and Pretrial Services Office filed an updated report on inmate data, including the 2019 Revised Presentence Report (PSR) relied on during sentencing.  *United States Probation and Pretrial Services Compassionate Release Req. Inmate Data* (ECF No. 86) (*Inmate Data*); *id.*, Attach 1, *Revised Presentence Investigation Report* (*PSR*).

## II.   THE PARTIES' POSITIONS

### A.   Ariel Martinez's Motion for Compassionate Release

#### 1.   Extraordinary and Compelling Circumstances

In his motion for compassionate release, Mr. Martinez "seeks review and reconsideration of the Court's previous denial of Motion for Compassionate Release, based upon 'extraordinary and compelling reasons' and intervening changes in the law prosecuted here in light of *United States v. Abdulaziz*, 998 F.3d 519 (1st Cir. 2021)." *Def.'s Mot.* at 1.

Mr. Martinez contends that he was "erroneously classified by the United States Probation," that his "substantial rights have already been affected by an error and classification of the career offender enhancement and upward variance of the

---

construe a pro se filer's pleadings); *Doyle v. Town of Falmouth*, No. 2:19-cv-00229-NT, 2019 U.S. Dist. LEXIS 183409, at *4-5 (D. Me. Oct. 23 2019) ("A document filed *pro se* is to be liberally construed, . . . and a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers") (quoting *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam) (internal quotations and citation omitted)).

[2]    On January 19, 2023, this case was randomly assigned to this Judge upon Judge Hornby's retirement.

guidelines sentencing range of over 100 months when his actual sentencing range under the correct guideline was 41 to 51 months," and that this "FRAUD, and inaccurate part of the RECORD must be reduced as the United States Sentencing Guidelines application are clear and established now and at the time [Mr.] Martinez was sentenced that the prior offenses relied upon for Career Offender enhancement never qualified as predicate offenses in which this Court previously stated as its justification and denial of the previous Motion for Compassionate Release." *Id.* at 2 (capitalization in Mr. Martinez's motion). Mr. Martinez further contends that he "has to date served in excess of 62 months" when "if sentenced in the correct guideline range without the erroneous Career Offender enhancement he would only face 51 months which is the correct penalty for the crime he was charged with." *Id.*

Mr. Martinez submits that extraordinary and compelling circumstances also exist because "[t]he BOP and the World has been experiencing an ongoing COVID-19 pandemic and its many variants for almost three years now . . . where inmates have been on one form or another of lockdown." *Id.* at 5. He additionally submits that the Court should "take into consideration . . . his medical condition asthma which places him at an increased risk of serious infection or death due to COVID and its variants." *Id.* He asserts that "the transmission rate of COVID-19 within the BOP is significantly higher than the transmission rate in the community," and this "increased risk of serious illness combined with his sentence being 100 months longer than the top of his correct guidelines range amount to extraordinary and compelling reasons." *Id.* at 6. He specifies that he has also been negatively impacted by COVID-

4

19 because "[i]nmates are not allowed to possess their legal documents such as PSR, Judgment of Sentence, or Conviction, and other necessary legal papers to prepare motions and conduct research."  *Id.* at 5.

### 2.    The Section 3553 Factors

Mr. Martinez submits that the Court should "exercise its substantial discretion in considering the factors under 18 U.S.C. 3553(a) . . . as this sentence should be similar to those on a national level similarly situated defendants and other factors under 18 U.S.C. 355(a) under the Court's 'substantial consideration and discretion.'" *Id.* at 2.  He further submits that the Court "clearly abused its discretion by relying upon inaccurate information from the Probation officer . . . stating that [his] two prior convictions for 'hemp' qualified as predicate offenses for Career Offender enhancement."  *Id.* at 3.

Mr. Martinez "ask[s] the court to take into consideration his youth as to his prior offenses which do not qualify as 'violent felonies' or 'serious crimes,' his background and upbringing" and the fact that he "has remorse for his past crimes and has asked God to forgive him and now he ask[s] the Court as he has tried to commit himself to a path of rehabilitation throughout the duration of his incarceration taking and completing several academic programs."  *Id.* at 4.  He contends that he "has had a lot of time to reflect on his past and to try to make a better future for himself and his family" and "he has a low recidivism rate and would like to volunteer as a mentor or youth counselor and be a positive role model and pillar in his community."  *Id.*  Mr. Martinez further contends that he "is not a danger

to the community" and requests that the Court "consider the steps he has taken in rehabilitation while he has been serving an unwarranted extremely long sentence that violates his substantial rights." *Id.* at 6.

### B.    Ariel Martinez's Request for Appointment of Counsel

Mr. Martinez requests "[a]ppointment of counsel under Criminal Justice Act 18 U.S.C. 3006A in the interest of justice as he is 'indigent' and presents a complex claim of merit upon which this Honorable Court should GRANT relief." *Id.* at 1.  He submits that he "cannot afford counsel to brief his issues which are complex and have merit." *Id.* at 5.  He further submits that he has "been previously represented by counsel in the present case and counsel will aid him as well as the Court to fully and fairly litigate the present issues." *Id.*  He insists that "[i]t has been a common practice of this Court to appoint counsel to similar[ly] situated defendants . . . under Criminal Justice Act, pursuant to Compassionate Release Motions under 18 U.S.C. 3582(c)(1)(A).

### C.    The Government's Opposition

#### 1.    Extraordinary and Compelling Circumstances

The Government submits that Mr. Martinez "has not established the presence of extraordinary and compelling circumstances" because his "primary argument is that his sentence should be reduced because he was erroneously sentenced as a career offender" and "that his asthma diagnosis in the context of the COVID-19 pandemic supports the presence of extraordinary and compelling circumstances." *Gov't's Resp.* at 11-12.

Regarding Mr. Martinez's argument that he was misclassified as a career offender, the Government rejects Mr. Martinez's claim that there are new issues not previously raised but that were obvious under clearly established law at the time of sentencing. *Gov't's Resp.* at 12-14. Specifically, the Government contends that to the extent Mr. Martinez relies on *United States v. Abdulaziz*, 998 F.3d 519, 531 (1st Cir. 2021), this case "only serves to underscore that this Court's Guideline findings at [Mr.] Martinez's sentencing were not in conflict with any controlling case law at the time they were made." *Id.* at 12-13. The Government insists instead that the "appropriate inquiry is whether this change in case law presents extraordinary and compelling circumstances that warrant reducing Mr. Martinez's sentence, *id.* at 13, and urges that "this Court's rationale in imposing sentence plainly indicates that it does not." *Id.* at 14. The Government recounts how the fact that Mr. Martinez's "career offender status was based on state offenses that were no longer criminalized at the state level at the time of sentencing" was considered at sentencing, and the "Court concluded that [his] career offender designation did not overstate his criminal history." *Id.* According to the Government, "the fact that a different guideline range would apply were [Mr. Martinez] sentenced today does not present extraordinary and compelling circumstances." *Id.*

Regarding Mr. Martinez's health conditions, the Government submits that the Court "has already declined to find that they presented extraordinary and compelling circumstances . . . during the height of the pandemic, before vaccines were available." *Id.* The Government further submits that Mr. Martinez "fails to make a compelling

7

case that his sole impairment [of asthma], either alone or in relation to his career offender status, presents extraordinary and compelling circumstances." *Id.* at 15.

The Government contends that Mr. Martinez's "status as a Care Level-1 . . . also mitigates against the severity of his impairment," *id.* at 14-15, and that Mr. Martinez "has offered no suggestion" that his asthma "has materially changed" since his prior motion for compassionate release." *Id.* at 15. The Government further contends that Mr. Martinez's medical records "reflect only one exacerbation of this condition in the past two years, over the course of several days in May 2021 . . . which he contemporaneously attributed to seasonal allergies . . . and later attributed to COVID-19 vaccination." *Id.* The Government notes that "a chest x-ray revealed no acute cardiopulmonary disease," pulmonary examinations were "normal," and "[l]ater examinations were similarly normal." *Id.*

### 2.  The Section 3553(A) Factors

The Government argues that the § 3553(A) factors "do not support Mr. Martinez's release" because he "would pose a danger to public safety if released" and his release, "having served less than half his sentence[], would undercut the seriousness of the offense" and not provide adequate deterrence. *Id.* at 16-17 (internal quotations and citations omitted). Specifically, the Government submits that "[t]he offense for which he is incarcerated [is a] drug charge, which [is] serious, and his conduct involved fentanyl." *Id.* at 16. The Government further submits that although Mr. Martinez claims to be a "changed person" and "no longer a threat to his community . . . because he has changed his attitude and mindset," the "BOP records

fail to support the breadth of these claims," and he "continues to be rated as having a high risk of recidivism." *Id.*

The Government moreover argues that releasing Mr. Martinez "having served less than half his sentence, would 'undercut the seriousness of the offence'" and not adequately deter the public. *Id.* at 17. The Government concludes that "in light of [Mr.] Martinez's record and the totality of relevant circumstances, this Court should deny his Motion for Reconsideration, whether construed as such or as a new motion for a sentence reduction." *Id.*

## III.    LEGAL STANDARD

"Section 3582(c)(1)(A) authorizes a court to reduce a term of imprisonment when 'extraordinary and compelling reasons warrant such a reduction.'" *United States v. Ruvalcaba,* 26 F.4th 14, 18 (1st Cir. 2022). "To grant the motion, the district court must find both that the defendant has presented an 'extraordinary and compelling' reason warranting a sentence reduction, . . . and that 'such a reduction is consistent with applicable policy statements issued by the Sentencing Commission.'" *Id.* at 18-19 (quoting § 3582(c)(1)(A)).

The United States Sentencing Commission's current policy guidance[3] for addressing compassionate release motions brought by the Director of the BOP, issued pursuant to Guideline § 1B1.13, "was last modified in November of 2018—before the

---

[3]     The Sentencing Commission's list of "four categories of extraordinary and compelling reasons: medical conditions; age; family circumstances; and a catch-all for other reasons deemed appropriate by the BOP. . . remains unchanged today." *Ruvalcaba*, 26 F.4th at 20 (citing U.S.S.G. § 1B1.13 cmt. n.1 (A) – (D)). "[S]ection 1B1.13 also requires a finding that the defendant is not dangerous in order to grant compassionate release based on extraordinary and compelling reasons." *Id.* at 19-20 n.5.

F[irst] S[tep] A[ct] (FSA) amended the compassionate-release statute to allow for prisoner-initiated motions." *Id.* at 20. In *Ruvalcaba*, the First Circuit resolved that district courts are not constrained by the Sentencing Commission's 2018 policy statement in adjudicating prisoner-initiated motions for compassionate release. *Id.* at 22-23 (emphasizing that § 603(b) of the FSA "effected a paradigm shift in how compassionate release would function" and that "[g]iven the profound nature of this paradigm shift, it is fair to say that the 'purposes' and 'appropriate use' of the compassionate-release statute have swelled beyond those that inhered in the statute when the Sentencing Commission issued its original policy statement").

The First Circuit clarified that the absence of an applicable policy statement does not leave the district court's discretion "unbounded," rather it remains "circumscribed by statutory standards, which obligate the district court to find a reason that is both 'extraordinary and compelling.'" *Id.* at 23 (citing *United States v. Canales-Ramos*, 19 F.4th 561, 566 (1st Cir. 2021) ("[T]he 'extraordinary and compelling' standard is logically guided by the plain meaning of those terms")). "[M]oreover, the current policy statement—though not 'applicable'—nonetheless may serve as a non-binding reference." *Id.*

Thus, until the Sentencing Commission updates its guidance applicable to prisoner-initiated motions, "the district courts will have to assess prisoner-initiated motions for compassionate release primarily through the lens of the statutory criteria." *Id.* "Ultimately, . . . it is within the district court's discretion—constrained

only by the statutory criteria[4] and any applicable policy statement—to make that [individualized assessment of a myriad of factors], case by case." *Id.* at 27-28. A court "may consider any complex of circumstances raised by a defendant as forming an extraordinary and compelling reason warranting relief." *Id.* at 28.

If the prisoner meets the extraordinary and compelling circumstances standard necessary to justify compassionate release, "the district court must [also] consider any applicable section 3553(a) factors," *id.* at 19, to "determine whether, in its discretion, the reduction . . . is warranted in whole or in part under the particular circumstances of the case." *United States v. Saccoccia*, 10 F.4th 1, 4 (1st Cir. 2021) (omission in *Saccoccia*). In particular, before granting the petition, a court must assess,

> [t]he nature and circumstances of the offense and the history and characteristics of the defendant, the need . . . to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; to afford adequate deterrence to criminal conduct; to protect the public from further crimes of the defendant; [and] to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.

18 U.S.C. § 3553(a). "Though the [§] 3553(a) factors may serve as an independent basis for a district court's decision to deny a compassionate-release motion," they "need only be addressed if the court finds an extraordinary and compelling reason favoring release." *Saccoccia*, 10 F.4th at 8.

---

[4] The only "explicit limitation on what may comprise an extraordinary and compelling reason" is "that '[r]ehabilitation . . . alone shall not be considered an extraordinary and compelling reason.'" *Id.* at 25 (alterations in *Ruvalcaba*) (quoting 28 U.S.C. § 994(t)).

The movant bears the burden of proving that he is entitled to a sentence reduction, and the Court has discretion to determine whether "the reduction . . . is warranted in whole or in part under the particular circumstances of the case." *United States v. Texeira-Nieves*, 23 F.4th 48, 52 (1st Cir. 2022) (quoting *Saccoccia*, 10 F.4th at 4); *see Saccoccia*, 10 F.4th at 4 (stating that the First Circuit's standard of review "[r]ecogniz[es] that the compassionate-release statute provides that a district court's decision to grant or deny a compassionate-release motion is discretionary").

## IV.   DISCUSSION

The Court first reviews Judge Hornby's 2019 sentencing of Mr. Martinez and concludes that Judge Hornby's reasoning still applies today and that no compelling and extraordinary reason exists to warrant a sentence reduction or early release.  The Court additionally concludes that at this time the § 3553(a) factors do not favor Mr. Martinez's release.

### A.   Judge Hornby's 2019 Sentencing

Judge Hornby sentenced Mr. Martinez on July 25, 2019.  *Tr. of Proceedings* (ECF No. 76) (*Sentencing Tr.*).  At the sentencing, "there [was] no dispute about the contents of the revised presentence report" and the "only question" for the Court was "where within the guideline range to sentence [Mr. Martinez] or whether [the Court] should depart from that range or seek -- or impose a variant sentence." *Id.* at 4:1-10.  At sentencing, the Government noted that Mr. Martinez's "counsel has argued in his sentencing memorandum that his career offender status in this matter overrepresents his criminal history and that the two offenses that provide him with

the status of career offender are for distribution of marijuana," and "[w]hile that may

be the case, the defendant has a lifetime of convictions at the mere age of 32." *Id.* at

6:14-21.  The Probation Office summarized Mr. Martinez's criminal history as follows:

> multiple convictions in 2005; multiple violations of probation in 2005;
> another conviction in 2006 at the age of 19; 2007 another conviction age
> of 20; 2008 another conviction at 21; 2009 another conviction at the age
> of 22; 2010 he has a violation of probation on that 2009 conviction; 2011,
> age 24, another conviction; 2013 a violation of probation on that; 2014 a
> violation of probation; and then another violation of probation in 2015
> on that same 2011 conviction where he ultimately served 15 months.  In
> 2013, at the age of 24, another marijuana distribution conviction; 2013
> another conviction age 25; 2013, age 26, another conviction; another
> conviction in 2013; another conviction in 2017 at the age of 29; and then
> ultimately the defendant's arrest on the eve of Thanksgiving in 2017.

*Id.* at 6:22-7:15.  The Government argued that "the fact that these are marijuana

distribution charges which may be the basis for the career offender status is merely

marking points for the Government to do a deeper dive and look at the fact that this

is a lifetime, since the age of 18, of multiple criminal convictions.  Some of which --

the Court has the factual basis before it in the presentence report -- involve crimes of

violence and violation of court orders." *Id.* at 7:16-24.

At sentencing, Defense counsel acknowledged Mr. Martinez's lengthy record

and declined to challenge the career offender designation but noted that in its

absence, the guidelines for Mr. Martinez would be 57 to 71 months. *Id.* at 12:14-

13:12.  Defense counsel argued that the career offender designation overstated Mr.

Martinez's criminal history, urged that his marijuana distribution offenses were not

reflective of a violent career criminal, and recommended a sentence of 84 to 96 months

imprisonment, below the guidelines but above the pertinent range had Mr. Martinez not been designated a career offender. *Id.* at 13:13-18:13.

In sentencing Mr. Martinez, Judge Hornby acknowledged that he "thought long and hard about [the] sentence" and that defense counsel did "an excellent job in advocating for [Mr. Martinez] and making the best possible case for reducing [his] sentence from what the guideline range would provide." *Id.* at 24:24-25:3. Nonetheless, he was not persuaded by the argument that Mr. Martinez was not really a career offender, explaining:

> You are a career offender in the classic sense. As I look at your criminal history, almost no year goes by that you're not convicted of some crime or another year after year after year. You have made a career out of violating the criminal law. And some of your crimes have been violent, and that's of great concern to me. And now it's not just marijuana, it's not even just heroin, now it's fentanyl that you're involved in.

> You're fortunate that the Government is not able to prove that a death resulted in this case from your fentanyl. I'm not going to take that into account because it cannot be proven. But what we all know is that fentanyl is a killer. It's a very dangerous drug. It's having a huge impact on Maine and around the country. It's a very dangerous drug to distribute and then for people to use.

> And so what I'm faced with is your continued pattern of violating the law. You don't comply with probation requirements. You don't comply with protection from abuse orders. And so I have a real need here to protect the public, to deter.

*Id.* at 25:6-26:2. Specifying that the Court considered Mr. Martinez to be a "classic career offender" and was concerned with the likelihood that he would recidivate, Judge Hornby sentenced Mr. Martinez to 151 months—a sentence at the bottom of the guideline range. *Id.* at 26:6:11. In imposing a sentence at the low end of the guideline range including the career offender enhancement, Judge Hornby recognized

14

that until this point, Mr. Martinez "had done only short times in prison" and praised Mr. Martinez on the rehabilitative steps he had taken during his incarceration, but he nonetheless determined that the 151-month sentenced imposed was necessary to protect the public and provide just punishment. *Id.* at 26:1-27:18.

### B.   Extraordinary and Compelling Reasons

To grant Mr. Martinez's motion under 18 U.S.C. § 3582(c)(1)(A)(i), the Court must find "extraordinary and compelling reasons" warranting a reduction in sentence. *Ruvalcaba,* 26 F.4th at 18. The Court reviewed both Mr. Martinez's description of his asthma and ongoing risk of contracting COVID-19 and the caselaw that Mr. Martinez claims was established and ignored at the time of sentencing and concludes that no extraordinary and compelling circumstances exist that merit a sentence reduction.

### 1.   COVID-19 as a Basis for Compassionate Release

On September 28, 2020, Mr. Martinez filed his first motion for compassionate release, arguing that his asthma condition in light of the COVID-19 pandemic presented an extraordinary and compelling circumstance for early release. *First Mot. for Compassionate Release* at 2-3. In his September 30, 2020 Decision and Order on Motion for Compassionate Release, Judge Hornby denied Mr. Martinez's motion, noting that although Mr. Martinez "is justifiably afraid of COVID-19 given his asthma," the observations Judge Hornby made at sentencing "still pertain, even in the face of the current pandemic." *First Order on Mot. for Compassionate Release* at 2. Judge Hornby concluded that "the circumstances here do not present

extraordinary and compelling reasons to reduce [Mr.] Martinez's sentence because his recidivism risk poses a significant danger to the community." *Id.* at 2-3.

Recent medical records confirm Judge Hornby's assessment that Mr. Martinez's asthma—even in light of COVID-19—does not constitute an extraordinary and compelling circumstance. *Gov't's Response*, Attach 3, *Ex. Medical R. Excerpts* at 29 (*Medical R.*) (chest x-ray revealing no acute cardiopulmonary disease, clear lungs, and normal heart size); *id.* at 21; 24-25; 27 (normal pulmonary examinations with no respiratory distress). His medical records reflect that Mr. Martinez experienced one exacerbation of his asthma in May 2021 and has since had no recorded flareups or abnormal examination. *Id.* at 19-29.

While Mr. Martinez's prior motion for compassionate release was filed during the peak of the COVID-19 pandemic, the present motion is filed over three years into the pandemic when COVID-19 is no longer considered a national emergency.[5] Although COVID-19 continues to present a real threat and the Court recognizes that Mr. Martinez suffers from asthma[6], the Court finds this condition does not make Mr. Martinez an appropriate candidate for compassionate release. *United States v. Davis*, No. 2:15-cr-00186-GZS, 2021 U.S. Dist. LEXIS 171136 at *3 (D. Me. Sept. 9, 2021)

---

[5]     On April 10, 2023, President Biden signed a joint congressional resolution ending the COVID-19 National Emergency Declaration. H.J.Res. 7 (April 10, 2023). On May 5, 2023, the World Health Organization announced that COVID-19 was "over as a global health emergency." Stephanie Nolan, *W.H.O. Ends Global Health Emer. Designation for Covid*, N.Y. Times (May 5, 2023).

[6]     The CDC includes "Asthma, if it's moderate to severe" as a medical condition that puts one "at higher risk of severe illness from COVID-19." *People with Certain Medical conditions*, CDC, People with Certain Medical Conditions | CDC (last visited April 24, 2023). Based on the medical records, the Court is unable to determine whether Mr. Martinez's asthma is classified as moderate to severe. In one medical record, Mr. Martinez himself described his condition as "Asthmatic bronchitis rather than true asthma." *Medical R.* at 11.

16

("The Court acknowledges that the ongoing pandemic is an extraordinary event for our entire country and has been especially challenging for the Bureau of Prisons. However, it is against this backdrop that a defendant must show individualized extraordinary and compelling reasons why he should not be required to serve the remainder of his sentence").

The Court moreover recognizes that COVID-19 has impacted Mr. Martinez's prison experience, including increased time in isolation and delayed mail delivery. *Def.'s Mot.* at 5. However, "the pandemic, and its subsequent natural impacts in and of themselves do not present an 'extraordinary and compelling' justification for [an inmate's] release." *United States v. Stone*, No. 1:08-cr-00006-JAW, 2021 U.S. Dist. LEXIS 213599, at \*20 (D. Me. Nov. 4, 2021). Finally, of course, as time goes by and the pandemic becomes endemic, less virulent, especially for the vaccinated, and less lethal due to the development of medicines such as antiviral and monoclonal antibody treatments, the impact of COVID-19 on BOP operations (and Mr. Martinez's prison experience) may become less dramatic. *See COVID-19 Treatments and Medications, CDC*, https://www.cdc.gov/coronavirus/2019-ncov/your-health/treatments-for-severe-illness.html (last visited April 21, 2023).

### 2.   Career Offender Designation

Mr. Martinez also argues that extraordinary and compelling circumstances exist because there are now "NEW ISSUES before the Court that were NOT previously raised, but were OBVIOUS under CLEARLY ESTABLISHED LAW" at the time of sentencing. *Def.'s Mot.* at 2 (capitalization in Mr. Martinez's motion).

17

Specifically, Mr. Martinez argues that he never qualified as a career offender and claims that this Court relied on inaccurate information in the PSR when it determined that his Massachusetts convictions for marijuana offenses qualified as controlled substance offenses. *Id.* at 3. Mr. Martinez predicates this argument on *United States v. Abdulaziz.* 998 F.3d 519 (1st Cir. 2021) (holding that a 2014 Massachusetts conviction for possession of marijuana was not a controlled substance offense within the meaning of USSG § 4B1.2(b) because the state statute included hemp, which was not listed on the federal Controlled Substances Act at the time of sentencing in September 2019). But *Abdulaziz* was decided on June 2, 2021 and thus was not clearly established caselaw at the time of Mr. Martinez's July 25, 2019 sentencing hearing.

Nonetheless, in *Ruvalcaba*, the First Circuit found that Congress never "expressly prohibited district courts from considering non-retroactive changes in sentencing law[.]" 26 F.4th at 25. District courts therefore have discretion to conduct "an individualized review of a defendant's circumstances and [effectuate] a sentence reduction . . . based on any combination of factors (including unanticipated post-sentencing developments in the law). *Id.* at 26 (citations omitted). *See also Setser v. United States*, 566 U.S. 231, 242-43 (2012) (holding that "when the district court's failure to anticipate developments that take place after the first sentencing produces unfairness to the defendant," section 3582(c)(1)(A) "provides a mechanism for relief"). Caselaw, however, "do[es] not go so far as to hold that such a change in the law, without more, may comprise an extraordinary and compelling reason sufficient

to warrant compassionate release.  Rather, [it] suggest[s] that the changed legal landscape must be considered in view of a defendant's particular circumstances." *United States v. Canales-Ramos*, 19 F.4th 561, 569 (1st Cir. 2021);  *see, e.g.*, *United States v. Maumau*, 993 F.3d 821, 837 (10th Cir. 2021) (Tymkovich, J., concurring) ("[A] district court may consider the legislative change to the stacking provision only in the context of an individualized review of a movant's circumstances"); *United States v. McCoy*, 981 F.3d 271, 285-87 (4th Cir. 2020) (affirming the district court's judgment granting compassionate release on the grounds of defendants' § 924(c) sentences, the sentencing disparity after the FSA's amendments, and each defendant's individual circumstances).

The Court concludes that *Abdulaziz* alone does not create an extraordinary and compelling circumstance requiring a sentence reduction in this case.   The recommended lower guideline for Mr. Martinez without a career offender enhancement would have been 57 months instead of 151 months, *Sentencing Tr.* at 13, while Mr. Martinez's attorney argued for a bottom guideline of 84 months.  *Id.* at 18.  Although there is a significant disparity between the sentence defense counsel recommended and the one Judge Hornby imposed, Judge Hornby expressly considered that Mr. Martinez's career offender status was based in part on marijuana convictions at the time of sentencing.  *Sentencing Tr.* at 23:5-26:22.  As Judge Hornby specified, despite the fact that some of the underlying convictions were marijuana-related, he nonetheless considered Mr. Martinez a career offender "in the classic sense." *Id.* at 25:6-7.  Judge Hornby decided that a sentence at the very bottom of the

19

then-applicable guideline range including the career offender enhancement was appropriate. *Id.* at 26:9-14. In doing so, he relied on a factually correct PSR. *Sentencing Tr.* at 3:24-4:10 (Mr. Martinez agreeing with the Court that there is no dispute as to the contents of the revised PSR). Judge Hornby thought at length about how to consider Mr. Martinez's prior offenses and ultimately decided to apply the career offender enhancement to Mr. Martinez based on the clearly established law at the time of sentencing in light of Mr. Martinez's extensive criminal record, including violent offenses.

To be more precise, the PSR's list of Mr. Martinez's prior criminal convictions fully justifies Judge Hornby's concern about the need for just punishment and protection of the public. Not including his federal conviction, the Court counted sixteen prior criminal convictions from 2005 through 2017. *PSR* ¶¶ 27-39. Mr. Martinez's record of domestic violence during this period is especially disturbing, including three domestic assaults, two violations of protection from abuse orders, and four criminal threatening convictions. *Id.* ¶¶ 27, 28, 29, 33, 35, 36, 38, 39. The domestic assaults were each serious and involved more than one female. *Id.* The criminal threat convictions included threats to kill a female. *Id.* ¶¶ 35, 36, 38, 39. Mr. Martinez had multiple violations of his state probation conditions. *Id.* ¶¶ 27, 28, 29, 32, 33, 34. Mr. Martinez had four prior controlled substance convictions, three involving marijuana but one involving heroin. *Id.* ¶¶ 31-34. Moreover, as Judge Hornby observed, Mr. Martinez's federal offense involved his possession with the intent to distribute fentanyl. *Id.* ¶¶ 4-10. Indeed, in the twelve years from 2005

20

through 2017, the only years Mr. Martinez did not commit at least one crime were 2010, 2014, and 2015. *Id.* ¶¶ 27-39. Mr. Martinez's criminal history combined with his new criminality would have amply justified the 151-month sentence, regardless of the career offender designation.

The Court thus concludes that neither Mr. Martinez's asthma nor any change in caselaw presents an extraordinary and compelling circumstance that warrants a sentence reduction.

### C.      The Section 3553(a) Factors

As the First Circuit has explained, "a supportable determination that the balance of the section 3553(a) factors weighs against a sentence reduction constitutes an independent reason to deny compassionate release." *Texeira-Nieves*, 23 F.4th at 55. Pursuant to 18 U.S.C. § 3582(c)(1)(A)(i), the Court has considered whether the § 3553(a) factors favor Mr. Martinez's release at this time. They do not. Although the Court considered each factor, it concludes that the nature and circumstances of Mr. Martinez's offense, the need to protect the public, and the need for adequate deterrence are the most pertinent considerations in Mr. Martinez's case.

At sentencing, Judge Hornby noted that "what we all know is that fentanyl is a killer. It's a very dangerous drug. It's having a huge impact on Maine and around the country. It's a very dangerous drug to distribute and then for people to use." *Sentencing Tr.* at 25:18-22. Mr. Martinez came to Maine for no purpose other than to distribute fentanyl to drug users in Maine. *Id.* at 8:15-17. The Court concurs with

Judge Hornby's assessment that fentanyl is a very dangerous drug and its distribution a very serious crime.

Although Mr. Martinez insists he is not a danger to the community and asks the Court to consider "the steps he has taken in rehabilitation while he has been serving an unwarranted extremely long sentence," his criminal history—including violent crimes against women—weighs against release.  *Def.'s Mot.* at 6.  The Court must balance the need to protect the public, and the PSR demonstrates an extensive criminal record including ten pages of convictions and other criminal conduct, as well as lying to law enforcement officers and disobeying court orders. *PSR* at 4-5; 8-18.  In addition, he "has incurred four incident reports during his current term of incarceration in the Bureau of Prisons: two at the greatest severity level and two at the moderate severity level." *Inmate Data* at 1.

Mr. Martinez highlights his rehabilitative efforts during incarceration, the extensive programming in which he has participated, and the fact that he has changed his attitude and mindset during his period of incarceration. *Def.'s Mot.* at 4.  Mr. Martinez "has completed 13 educational courses, and he is currently enrolled in two courses." *Inmate Data* at 1.  However, "'[m]erely raising potentially mitigating factors does not guarantee' a favorable decision" under the discretionary balancing of factors to warrant compassionate release.  *Saccoccia*, 10 F.4th at 10 (quoting *United States v. Davila-Gonzalez*, 595 F.3d 42, 49 (1st Cir. 2010)).  As the First Circuit has emphasized, "compassionate release motions should not devolve into satellite sentencing hearings."  *Id.* (noting, "in the analogous [§]3582(c)(2) context," the

Supreme Court's explanation that "a sentence modification . . . is 'not a plenary resentencing proceeding'" (quoting *Chavez-Meza v. United States*, 138 S. Ct. 1959, 1967 (2018))).

In conjunction with the fact that Mr. Martinez has now served only roughly 42% of his sentence, the Court concurs with Judge Hornby's assessment that "the circumstances here do not present extraordinary and compelling reasons to reduce [Mr.] Martinez's sentence because his recidivism risk poses a significant danger to the community." *First Order on Mot. for Compassionate Release* at 2-3.

### D.     Summary

Given the fact that Judge Hornby thoroughly considered the nature of the prior offenses that elevated Mr. Martinez to career offender status when sentencing him in 2019, the Court concludes that no intervening caselaw requires a change in sentencing and releasing Mr. Martinez early would contravene the 18 U.S.C. § 3553(a) factors because the nature and circumstances of the offense as well as the need to deter and to protect the public weigh against release.  On the record now before the Court, Mr. Martinez is not an appropriate candidate for compassionate release.

### E.     Ariel Martinez's Motion for Appointment of Counsel

Defendants have no automatic right to counsel in post-conviction proceedings. *United States v. Frechette*, No. 2:18-cr-112-DBH-04, 2020 U.S. Dist. LEXIS 124857, *3-4 (D. Me. July 16, 2020) (citing *Pennsylvania v. Finley*, 481 U.S. 551, 555 (1987)). District courts have discretion over whether to grant a defendant's motion for

appointment of counsel.  *Id.*  The Court concludes that it is not necessary to appoint counsel at this time to resolve any complex legal or factual issues related to Mr. Martinez's motion.  *See United States v. Dent*, No. 2:15-cr-10-DBH-01, 2020 U.S. Dist. LEXIS 194814, *4 (D. Me. Oct. 21, 2020) (finding that appointment of counsel would not assist the court in resolving defendant's motion for compassionate release); *United States v. Gutierrez*, No. CR 06-40043-FDS-2, 2020 U.S. Dist. LEXIS 59049, at *2 (D. Mass. Apr. 3, 2020) (denying motion to appoint counsel to assist with First Step Act claim after concluding defendant was not eligible for relief under the Act).

## V.    CONCLUSION

The Court DISMISSES without prejudice Ariel Martinez's Motion for Reconsideration and Review of Denial of Previous Motion for Compassionate Release and Motion to Appoint Counsel (ECF No. 80).

SO ORDERED.

/s/ John A. Woodcock, Jr.
JOHN A. WOODCOCK, JR.
UNITED STATES DISTRICT JUDGE

Dated this 8th day of May, 2023.